IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **Zigen, Inc.** and **Edvard Dellalyan**, | § | |
| | § | |
| Plaintiffs | § | Civil Action No. _____ |
| | § | |
| *versus* | § | |
| | § | |
| **Cabin Management Solutions, Inc.** and | § | |
| **Larry Uichanco** | § | **Jury Demand** |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Zigen, Inc., and Edvard Dellalyan hereby sue Defendants Cabin Management Solutions (CMS) and Larry Uichanco Ami Ventures, Inc., a Texas Corporation, and allege as follows:

### I.    THE PARTIES

1. Plaintiff Ed Dellalyan is a California resident who may be served via counsel.

2. Plaintiff Zigen Inc. is a California corporation that may be served via counsel.

3. Defendant Cabin Management Solutions, LLC (CMS) is a Texas business with mailing address 6700 Woodlands Pkwy Ste 230-215 The Woodlands, TX 77382-2575. CMS may be served by certified mail to its registered agent, C T Corporation System, at 1999 Bryan St. Suite 900 Dallas, TX 75201.

4. Larry Uichanco is a California citizen who may be served by process server to his residence at 1751 Shawness Court. Westlake Village, CA 91362. Mr. Uichanco has traveled frequently to Texas to conduct business with Defendant CMS and is now a CMS employee. On information and belief Mr. Uichanco plans to reside in Texas.

## II.    JURISDICTION AND VENUE

5.  This dispute arises out of actions and contacts between the Parties and the State of Texas and relates to each of the Defendants' contacts in the State of Texas.

6.  Therefore the Court has personal jurisdiction over each and every Defendant.

7.  This dispute is between citizens of different states and the matter in controversy exceeds $75,000.

8.  Therefore, this Court has diversity jurisdiction over the Parties pursuant to 28 U.S.C. § 1332.

9.  This dispute comprises federal claims and related claims under common law.

10. Therefore, this Court has federal question jurisdiction over all federal claims and supplemental jurisdiction over all other related claims, pursuant to 28 U.S.C. §§ 1331 and 1367, respectively.

11. A substantial part of the events or omissions giving rise to this dispute occurred in the Southern District of Texas.

12. Therefore, venue is proper in the Southern District of Texas.

## III.    FACTS

### A.  Plaintiffs' Intellectual Property and Trade Secrets

13. Prior to Spring 2021, Plaintiff Dellalyan developed a novel and proprietary audio video over internet protocol communication system (AVoIP).

14. Prior to Spring 2021 Dellalyan restricted crucial information about his AVoIP system to within his own company, Plaintiff Zigen, and specifically restricted enabling information for the AVoIP system to Zigen employee, Defendant Uichanco.

15. Likewise, because Defendant Uichanco possessed the capacity to adapt the AVoIP technology for others, Plaintiffs restricted identifying this capacity to others.

16. Thus, prior to Spring 2021, the AVoIP system was not generally known or readily ascertainable through proper means except through Plaintiffs—or Defendant Uichanco, whose capacity in this regard was also not known or readily ascertainable through proper means.

17. And, through oral conversations at least with Defendant CMS and third-party Dolby Laboratories, Inc., Plaintiffs learned that enabling information of the AVoIP system and the identities of those possessing the capacity to adapt it, had an independent economic value, actual or potential, of between $1.25 million to $2.5 million.

**B. Plaintiffs' Contract with Defendant CMS and Actions Taken in Reliance thereof**

18. On or around Spring 2021, Plaintiffs proposed to provide enabling disclosures of its AVoIP to Defendant CMS and that the AVoIP technology could be adapted for use within an aircraft.

19. On or around Spring 2021 the Parties negotiated the following terms as memorialized in an email dated March 22, 2021:

    a.  In consideration for the AVoIP technology and enabling disclosures:

        i.  CMS pays Zigen $1.25M; and

        ii.  CMS pays Dellalyan 4% of its B stock; and

    b.  In consideration for Plaintiffs' services adapting and supporting the AVoIP technology:

        i.  CMS contracts Dellalyan for two years at $250,000 per year.

      ii.  CMS utilizes engineer Uichanco and pays him 0.5% of its B stock after 1-year.

20. Subsequently, the Parties began performance pursuant to the above terms.

21. Specifically, by Summer 2021, Plaintiffs and Uichanco had fully disclosed the AVoIP technology to CMS, assisted in the drafting and filing of US Patent Reg. No. 11/265,358, assigned all rights in the '358 patent to CMS, and received monthly payments for their services enabling, adapting, and supporting the adaptation of the AVoIP system for CMS.

**C.  Breach of Contract Terms by Defendant CMS**

22. Defendant CMS has not paid Plaintiff Zigen any of the negotiated $1.25M purchase price for the AVoIP system.

23. Defendant CMS has not paid Plaintiff Dellalyan any of the negotiated 4% of its B-stock purchase price for the AVoIP system.

24. On information and belief, Defendant CMS never intended to pay either Zigen or Dellalyan the negotiated price for the AVoIP system and disclosures.

25. Rather, in November 2022 Defendant CMS even attempted to renegotiate the purchase price of the AVoIP system.

26. Defendant CMS has not paid Plaintiff Dellalyan any of the negotiated 4% of its B-stock for services rendered. (Dellalyan's stock option is 4% upon contract accretion.)

27. As of November 2022 Defendant CMS has stopped paying Plaintiffs the negotiated $250,000 per year.

**D.  Plaintiffs' Actual Damages**

28. In reliance upon the contract terms accepted by Defendant CMS, Plaintiffs forfeited ownership of their AVoIP system and permitted disclosures of their trade secrets—which they could have sold to a third party for $2.5M.

29. Because Plaintiffs had to redirect their limited resources to fulfill their contractual obligations to Defendant CMS, Plaintiffs necessarily stopped developing other projects and products.

30. And, by prioritizing its contractual obligations to Defendant CMS to the exclusion of its other clients, Plaintiffs have lost many of those clients.

31. Specifically, but for its obligations to Defendant CMS, Plaintiffs have lost approximately $100,000 per month in sales and will require several years to regain momentum in the marketplace. (Please note that $100K is a factual number and that we are also losing on our projected numbers should we have continued with production of this eco-system under our brand name. The projected numbers were $350+K per month for 2021 and $500+K per month for 2022).

32. Additionally, Plaintiffs have lost their opportunity and momentum in this space, and it will take several years of engineering to stay relevant to a market that has moved from their brand. It took Plaintiffs 10+ years to attract specific customers to sell "AVoIP" products to.

**E.  Defendant CMS's Unjust Enrichment**

33. By receiving enabling disclosures and assignments for the AVoIP system without paying any of the negotiated $1.25M purchase price, Defendant CMS has been unjustly enriched.

34. By receiving enabling disclosures and assignments for the AVoIP system without paying any of the negotiated 4% of its B-stock, Defendant CMS has been unjustly enriched.

35. By accepting the enabling disclosures and services of Plaintiff Dellalyan and Defendant Uichanco without paying any of the negotiated 0.5% of its B-stock, Defendant CMS has been unjustly enriched.

36. And, on information and belief, Defendant CMS would have required at least three years to develop or adapt the AVoIP system without the assistance and disclosures of either Plaintiff Dellalyan or Defendant Uichanco, and has accordingly been unjustly enriched by not fully compensating Plaintiffs for such assistance.

### IV.　Causes of Action

**A.　Count I – Breach of Contract (CMS only)**

37. Plaintiffs' email dated March 22, 2021 comprised the clear and definite terms of the Parties oral agreements, including, in pertinent part, mutual consideration comprising compensation for the transfer of IP and provision of related services.

38. After receiving documentation of the Parties' oral agreement, Defendant CMS began performance thereon by paying Plaintiffs' service fees, accepting the Plaintiffs' contractual performance, and receiving the benefits therefrom.

39. Alternatively, Plaintiffs' email dated March 22, 2021 comprised an intended offer communicating essential terms of a proposed transaction and Defendant CMS's performance thereon comprised an acceptance of that offer.

40. Accordingly, Plaintiffs and Defendant CMS had a valid contract.

41. However, Defendant CMS has breached the contract by failing to fully compensate the Plaintiffs after their complete performance of all contractual obligations.

42. As a result of the contract breach by Defendant CMS, Plaintiffs have incurred actual and compensatory damages, including legal fees.

**B.　Count II – Fraudulent Inducement (CMS only)**

43. By promising to pay $1.25M to Plaintiff Zigen and 4% of its B stock to Plaintiff Dellalyan in exchange for ownership of the Plaintiffs' AVoIP technology, Defendant

CMS made material misrepresentations that it both valued the property for this price and that it would pay for it.

44. By promising to pay $250,000 per year for two years, 0.5% of its B stock after 1 year, and 4% of its B stock once intellectual property is transferred in exchange for Plaintiff Dellalyan's services adapting and supporting the AVoIP technology, Defendant CMS made material misrepresentations that it both valued the services for this price and that it would pay for it.

45. As evidenced by not fully paying and then questioning the true value for the agreed upon property and services, Defendant CMS made its material misrepresentations with knowledge of their falsity or without knowledge of their truth.

46. By transferring ownership of their property and providing services in accordance with their agreements, Plaintiffs relied on Defendant CMS's misrepresentations.

47. As a result of Plaintiffs' reliance on the misrepresentations, they have incurred actual and compensatory damages, including legal fees.

**C. Count III –Texas Theft Liability Act – Property (TTLA § 31.03) (CMS only)**

48. Plaintiffs' ownership interest in its AVoIP system comprise intangible personal property and its ownership interest in U.S. Patent Reg. No. 11/265,358 is also property since it comprises a document that represents or embodies something of value (collectively, Plaintiffs' Property). *See* TTLA §§ 31.01(5)(B)-(C).

49. By inducing Plaintiffs to disclose and assign ownership interest in the Property, Defendant CMS brought about a transfer of title or other nonpossessory interest in the Property and has thus acquired or otherwise exercised control over the property. *See* TTLA §§ 31.01(4).

**PLAINTIFFS' ORIGINAL PETITION**                                    **PAGE 1 OF 11**

50. Yet Defendant CMS induced the appropriation by creating or failing to correct the Plaintiffs' impression that CMS would provide full compensation for the negotiated value of the Property—despite having no intention to do so. *See* TTLA § 31.01(1).

51. Defendant CMS thus deceptively induced the appropriation of Plaintiffs' Property without the Plaintiffs' effective consent. *See* TTLA § 31.01(3)(A).

52. Accordingly, Defendant has committed theft by unlawfully appropriating the Plaintiffs' Property. *See* TTLA §§ 31.03(a)-(b)(1).

**D. Count IV –Texas Theft Liability Act – Service (TTLA § 31.04) (CMS only)**

53. By enabling, adapting, and supporting the AVoIP system for Defendant CMS, Plaintiffs have provided a service (the Service). *See* TTLA § 31.01(6)(A).

54. By promising to pay $250,000 per year for two years and 4% of its B stock for the Services, Defendant CMS intentionally or knowingly secured the performance of Plaintiffs' services by promising to provide compensation (the Service Agreement).

55. Because the Plaintiffs and Defendant CMS negotiated the Service Agreement before Plaintiff began performance thereon, CMS knew the Plaintiffs' service was provided only for compensation.

56. Yet Defendant CMS secured Plaintiffs' performance of the Service by creating or failing to correct the Plaintiffs' impression that CMS valued the service and would pay for that value—despite having no intention to do so.

57. Defendant CMS thus intentionally or knowingly secured performance of the Service by deception. *See* TTLA § 31.01(1).

58. Further, by falsely offering Plaintiffs payment by stock, a token, Defendant CMS intentionally or knowingly secured performance of the Service by false token.

59. Accordingly, after Plaintiffs rendered the Service, Defendant CMS failed to make full payment.

60. Plaintiffs have demanded payment for their services, in writing, by certified mail and email, to Defendant CMS's registered address. *See* TTLA § 31.04(c)

61. Because Defendant CMS has failed to make payment under the Parties' Service Agreement within 10 days after receiving notice demanding payment, it has intended to avoid payment for the Plaintiffs' services. *See* TTLA § 31.04(b)(2).

62. Therefore, Defendant CMS has committed a theft of Plaintiffs' services. *See* TTLA §§ 31.04(a)(1) and 31.04(a)(4).

**E. Count V – Trade Secret Misappropriation pursuant to DTSA (18 U.S.C. § 1839), UTSA (Tex. Civ. Rem. Code § 134) and Theft of Trade Secret (TTLA § 31.05) (CMS only)**

63. Plaintiffs' relevant trade secretes comprised both enabling information with respect to the AVoIP system and the identity of Defendant Uichanco, because the Plaintiffs took reasonable measures to keep the proprietary information and intellectual property secret and the information derived independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3) and TTLA § 31.05(4).

64. Defendant CMS acquired the Plaintiffs' trade secrets by improper means because they were acquired by theft or misrepresentation rather than by reverse engineering, independent derivation, or any other lawful means. *See* 18 U.S.C. § 1839(6) and TTLA § 31.01(3)(A).

65. Because Defendant CMS acquired Plaintiffs' trade secrets by improper means, CMS has misappropriated the trade secret. *See* 18 U.S.C. § 1839(5).

66. Because CMS has adapted the Plaintiffs' trade secrets for use on commercial aircraft, Defendant CMS has used or intends to use the Plaintiffs' trade secret in interstate or foreign commerce. *See* 18 U.S.C. 1836(b)(1).

67. Therefore, Defendant CMS has misappropriated or stolen the Plaintiffs' trade secrets pursuant to both Federal and Texas state law.

**F.  Count VI – Breach of Fiduciary Duty (Uichanco only)**

68. Defendant Uichanco was formerly an employee of Plaintiff Zigen.

69. As an employee of Plaintiff Zigen, Defendant Uichanco received proprietary knowledge and training from Plaintiff Dellalyan with respect to the enablement, development, adaptation, and support of the AVoIP system.

70. Additionally, over three years of employment Defendant Uichanco received professional knowledge and support paid for by Plaintiff Dellalyan with Zigen. Zigen spent thousands of dollars in engineering costs and revisions to ensure a working product.

71. Plaintiffs trusted and relied on Defendant Uichanco to utilize his training and knowledge of the AVoIP system to help them perform their contractual obligations to Defendant CMS.

72. As an employee of Plaintiffs contracted out to Defendant CMS, Defendant Uichanco owed Plaintiffs a fiduciary duty of loyalty, good faith, struct integrity and accountability, and fair and honest dealing.

73. However, Defendant Uichanco has since left employment with Plaintiffs and accepted employment with Defendant CMS to continue adapting and servicing the AVoIP system without Plaintiffs' continued involvement, consent, or compensation.

74. Accordingly, Defendant Uichanco breached his fiduciary relationship to proximately benefit his own personal interest at the Plaintiffs' expense.

## V.    PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth above and award relief including, but not limited to, the following:

A.    That Defendants be ordered to actual, consequential, and restitution damages.

B.    That Defendant CMS be compelled to account to Plaintiffs for any and all profits derived from its illegal acts complained of herein and pay unjust enrichment damages.

C.    That Defendants be ordered to pay Plaintiff's costs and attorneys' fees in this action pursuant to applicable laws.

D.    Awarding any such other relief as the Court may deem just and proper.

## VI.    JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated this _____ day of January 2023.

Respectfully Submitted,

Leavitt Eldredge Law Firm

  _/Brandon J. Leavitt/_____
Brandon James Leavitt
Tx Bar No. 24078841

4204 SW Green Oaks Blvd., Suite 140
Arlington, TX 76107

(214) 727-2055
brandon@uslawpros.com

ATTORNEYS FOR PLAINTIFFS